### WHITTEMORE BROS. CORPORATION v. RAMSEY.

(District Court, D. Massachusetts. July 28, 1924.)

#### No. 1739.

Trade-marks and trade-names and unfair competition ⬥86, 87—Complainant held not entitled to injunction to restrain or limit use of trade-mark.

Complainant *held* not entitled to an injunction restraining the use by defendant of the word "Superb" as a trade-mark for liquid shoe polish or paste dressing, where both parties or their predecessors had used the word as a trade-mark for shoe dressings for more than 20 years, each with knowledge of its use by the other; priority of use being in doubt.

In Equity. Suit by the Whittemore Bros. Corporation against H. W. Ramsey. Decree for defendant.

George H. B. Green, Jr., of Boston, Mass., and Owen, Owen & Crampton, and F. F. Crampton, all of Toledo, Ohio, for plaintiff.

James J. Irwin, of Boston, Mass., for defendant.

MORTON, District Judge. This is a suit to restrain an alleged infringement of the word "Superb" as a trade-mark applied to shoe dressing. The case was fully heard on depositions and oral testimony. The trade-mark was registered by the plaintiff's predecessor in the United States Patent Office on February 13, 1906. The facts are as follows:

The plaintiff does a large business in manufacturing and selling shoe polish. For a number of years it and its predecessors have made extensive use in domestic and foreign commerce of the brand or trade-mark here in question, which consists only of the word "Superb." The defendant also is a manufacturer of shoe polish. He admittedly uses "Superb" as a trade-mark, and he asserts the right to do so because of a continuous use of it by himself and his predecessors in business to a time antedating the first use by the plaintiff and its predecessors.

The plaintiff's business was started by the grandfather of one of the present managers in 1852 or 1853, at West Bridgewater, Mass., and has grown with the passing years. It first applied the word "Superb" to a dressing used on patent leather, and known as "Patent Leather Dressing," the new name being "Superb Patent Leather Dressing." For some years this was the principal, if not the only, use of the trademark. Just when this was done is not very definitely established. As late as November 17, 1890, the dressing was still being sold as "patent leather dressing." By the end of 1899 it was certainly being sold as "Superb Patent Leather Dressing." The plaintiff's records back of 1899 were inadvertently destroyed some years ago. Mr. Carl Whittemore testifies that "Superb" was used as early as 1892 or 1893; but other witnesses called by the plaintiff—Mr. Pessels, its superintendent, and Mr. Emery, its credit man—place the earliest use as about 1895; Mr. Emery thought early in 1895. The statements made by the plaintiff's predecessor in connection with the registration in 1906 gave the date of earliest use as 1890; but they are distinctly self-serving declarations, and do not carry much weight as against testimony in court; and the uncorroborated recollection of interested witnesses upon such a point, going back 30 years, is hardly safe to rely upon, except with a considerable margin for error. At the time when this bill was filed "Superb" was used by the plaintiff on a pretty extensive line of paste shoe polishes, and had become widely associated in the trade in question with the plaintiff's goods.

On the other side, the defendant's business was begun by Alden T. Cleveland during the latter part of 1893 or the first part of 1894. He owned and ran it until 1914, when it was incorporated and sold to one Gleason. Gleason sold to the present owner, Mr. Ramsey, in 1922. Mr. Cleveland testifies that he adopted the word "Superb" as a trademark when he began his business, having looked the matter up and found that no other manufacturer was then using it. I think that his label, as shown in the Parker-Holmes catalogue of 1902, lends support to this statement. It emphasizes "Superb" as the principal word, something which the plaintiff's predecessors did not do till later, and it is likely he would have looked the matter up before so identifying his product with the word. Cleveland's business was in or near Boston. He was familiar in a general way with what Whittemore Bros. were then doing, and he testified that their first use of the word, to his knowledge, was some years after he had adopted it. Again the catalogues tend to support him. They show that Whittemore's early use of "Superb" was in an unemphasized manner. As late as 1910 Whittemore's marking was "Superb Patent Leather Dressing," with all words printed the same size. Whittemore had many other trade-marks or brands; Cleveland apparently only this one. Mr. Humphrey and Mr. McKay, who for many years have been salesmen in retail shoe shops in Boston, both say that they have known about Cleveland's "Superb" shoe polish since as early as 1895. Mr. Humphrey fixes the date with reference to his employment in a shoe store on Winter street, which he left about 1897, and Mr. McKay with reference to a visit to Boston to the World's Christian Endeavor Convention in 1895, when, as

a boy, he came in contact with Mr. Cleveland through an uncle, who was a friend of Mr. Cleveland. He testifies that at that time he saw jugs marked "Cleveland's Superb" polish. He went into the shoe business himself in 1901 in Houlton, Me., and he bought "Superb" polish from Cleveland. It was then a liquid dressing sold in a bottle. In the Parker-Holmes Company catalogue of 1900 the word "Superb" appears in use as a trade-mark by both Whittemore and Cleveland, but Cleveland's use of it is more prominent and distinctive than Whittemore's. The former's product is listed as "Cleveland's Superb Polish"; the latter's as "Whittemore's Patent Paste," with a cut of the box on which appears "Superb Patent Leather Polish." The following year this catalogue again listed "Cleveland's Superb Polish," and under the heading "Whittemore's Dressings" it listed about a dozen different trade-marks or brands, e. g., "Gilt Edge," "Boston Dressing," "Star Russet," "Jewell Brown," "Superb Pat. Paste," etc. In 1902 this catalogue lists "Whittemore's Dressings" much as in 1901; but it shows on the same page a cut of "Cleveland's Superb Polish," a bottle having a label on which "Superb" is very prominent. In the 1910 catalogue of the Hamilton-Brown Shoe Company, of Boston and St. Louis, the same cut appears beside Whittemore's "Oil Paste." These were leading houses, and I can hardly doubt that both Whittemore and Cleveland were aware of this advertising.

It is clear that neither concern was using the trade-mark in question in 1890; that both were using it in the latter part of 1899, when the Parker-Holmes catalogue dated 1900 was prepared; and that the use by both has been continuous since that time. All of the earlier use by Cleveland appears to have been in connection with liquid polishes; Whittemore has always applied the word to pastes. Each party must have known that the other was using the word as a trade-mark in the manner just described. Cleveland never attempted to prevent Whittemore from doing so, and until recently Whittemore never attempted to prevent Cleveland. I think it probable that "Superb" is associated in the trade with Whittemore's paste and Cleveland's liquid dressings. It is only recently that the Cleveland business has entered the former field and begun to apply the word to pastes in any such extensive way as would be likely to attract the plaintiff's attention. Undoubtedly the present suit is occasioned by the fact that Ramsey is endeavoring to develop the Cleveland business and is pushing the sale of its goods more strongly than had formerly been done. But I do not see that this affects the result.

Here are two concerns, both situated in or near Boston, and both of which for more than 20 years have been using this word as a trade-mark. I do not think that the case turns on any narrow margin of priority. If it did, I should think the defendant's testimony as persuasive on that point as the plaintiff's, and that the latter has not established prior adoption and use. On such facts it seems to me clear that neither of the parties is now entitled to prevent the other from using the word in the way in which the other party has so long been using it. The one which first adopted and used it has, by long acquiescence, lost the right to prevent the other from doing so.

Aside from acquiescence, the situation presents an element of laches or estoppel. For over 20 years the plaintiff and its predecessors have taken no action to assert their alleged rights in the face of what it now says is open infringement. Witnesses who knew the facts have died; memories have grown dim; records have disappeared; the evidence which 20 years ago would have been clear and decisive is now vague or lost. During this inaction by the plaintiff the defendant and its predecessors have gone ahead and built up their business. If the case required it, I should be inclined to say that this ground alone is sufficient to bar the plaintiff from the broad relief in equity which it seeks.

The most difficult question is whether the plaintiff is entitled to an injunction preventing the defendant from applying "Superb" to pastes. Both forms of dressing serve the same general purpose, and, while the evidence is not very clear, I infer that both may be put out by the same manufacturer. For reasons already stated, I am of opinion that the plaintiff has not established its priority over the defendant's predecessors in the original use of "Superb" as applied to shoe polish. This being so, I do not think it entitled to restrict the defendant's use of the word, provided, of course, no actual fraud or misrepresentation is practiced.

There is no evidence of actual fraud in putting out the defendant's goods as the plaintiff's, nor is there any fraudulent imitation of dress or package. If the defendant, in putting out shoe pastes, should endeavor to appropriate the plaintiff's good will, a different case will be presented.

It is unnecessary to decide whether "Superb," as applied to shoe polishes, is so descriptive as to be insusceptible of valid appropriation as a trade-mark.

Bill dismissed, with costs.